**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Jennifer Plank-Greer,  Case No. 3:13CV01266

    Petitioner

    v.  **ORDER**

Tannerite Sports, LLC, et al.

    Respondent

This is a personal injury case in which plaintiff Jennifer Plank-Greer alleges defendant James W. Yaney failed to use reasonable care when he detonated a refrigerator filled with explosives that nearly severed plaintiff's hand.

Defendant moves for summary judgment (Doc. 143) on the grounds that, as a licensor, he owed plaintiff only the duty to refrain from wantonly or willfully causing injury, and, even if he was a host, he did not breach his duty to exercise ordinary care. For the following reasons, I deny defendant's motion for summary judgment.

**Background**

When Jason Vantilburg discovered he was going to become a father, he decided to have a "diaper party," so that guests could bring diapers as gifts for the new baby. Vantilburg had a gathering at the local church, and also asked his friend, the defendant, to host a party at his country home. Vantilburg asked defendant to host the party so that, unlike at his suburban

1

residence, the guests could have a day outside shooting guns. Defendant agreed, and Vantilburg sent out invitations, naming the event the "diaper shootout."

For the event's grand finale, Vantilburg decided he wanted to blow up an old refrigerator in front of his guests. Vantilburg had gotten the idea when, three weeks earlier, the defendant, defendant's brother-in-law, and Vantilburg blew up a dryer on defendant's property.

To blow up the dryer, they used a one-pound canister of H2Target explosives (H2). The H2 contained a warning label, attached to the side of the canister, that read, "misuse of this product can result in serious bodily injury, destruction of property, and/or loss of life or limb." The label went on to state that the product was to be used "at a minimum distance of 50 yards."

Before they detonated the H2, defendant and Vantilburg read the canister's safety instructions and ensured that everyone was fifty yards away. Defendant's brother-in-law then took his rifle and shot the H2 inside the dryer, causing it to explode.

Defendant and Vantilburg, having chosen what they wanted for the day's events, went about preparing for the party. Defendant transported the refrigerator from Vantilburg's house to his own, hauled an old box van to his backyard to be used as a shooting target, and supplied various guns for the guests to use. Defendant also set up tables for guns and ammunition, and ensured that the tables were at least fifty yards away from where the refrigerator would be detonated.

To repurpose the refrigerator, defendant provided Vantilburg with the necessary tools. Vantilburg cut a hole on one side so that he could shoot the H2 container and bolted the refrigerator's door shut. Vantilburg then placed three pounds of H2 inside of the refrigerator—two more pounds than what had been used to blow up the dryer.

During the party, defendant was present, directing guests, and providing safety instructions to those shooting. Among the guests was plaintiff Jennifer Plank-Greer, whom Vantilburg had personally invited, and her son. Before the party, plaintiff and defendant had never met. When plaintiff and her son arrived, defendant greeted her, told her where to put the food she had brought, and took her and her son to the backyard so that her son could shoot his air rifle.

Towards the end of the party defendant and Vantilburg decided it was time for the finale, and they pulled the refrigerator from defendant's barn into the backyard. Vantilburg motioned for the guests, including plaintiff, to move behind the tables that defendant had set out. Vantilburg got into position behind his high-powered rifle.

The guests, having not been told what was about to occur, waited. Plaintiff held her arm outstretched, filming the scene with her cellphone.

Vantilburg yelled "fire in the hole" and pulled the trigger. The $H_2$ inside the refrigerator immediately exploded. The explosion, given the quantity of $H_2$ and the enclosed, unvented metal space in which it occurred, blew shrapnel across the yard. A piece of metal sliced through plaintiff's hand, cutting the bone and leaving four of her fingers dangling by the remaining skin.

Plaintiff brought this timely suit for the injuries she suffered, (Doc. 1), and defendant now moves for summary judgment.

## Standard of Review

Rule 56 of the Federal Rules of Civil Procedure entitles a party to summary judgment where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the burden shifts "to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, I accept the non-movant's evidence as true and construe all evidence in its favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).

## Discussion

Defendant Yaney seeks summary judgment on two grounds. First, defendant contends plaintiff was his licensee, not a social guest, so that he owed her only a duty to refrain from wantonly or willfully injuring her. Second, defendant argues that, even if he plaintiff was a social guest (and he her social host), he did not breach a host's duty to exercise ordinary care or warn her of any dangerous conditions on the premises.

### A. Defendant's Status as a Host

In Ohio, the status of the person who enters the land of another defines the scope of the legal duty the landowner owes that person. *Shump v. First Contintental-Robinwood Assoc.*, 71 Ohio St.3d 414, 417 (1994). Ohio recognizes four types of entrants: business invitee, social guest, licensee, and trespasser. *Scheibel v. Lipton*, 156 Ohio St. 308 (1951).

The landowner owes business invitees the highest duty of care. A business invitee is someone who is on the "premises of another, by invitation, express or implied, for some purpose which is beneficial to the other." *Light v. Ohio Univ.*, 28 Ohio St.3d 66, 68 (1986) (citing *Scheibel, supra*, 156 Ohio St. at 308).

A licensee is someone who enters "premises of another by permission or acquiescence, for his own pleasure or benefit, and not by invitation." *Id*. at 68. Licensors are "not liable for ordinary negligence and owe[] the licensee no duty except to refrain from wantonly and willfully causing injury." *Id*. (citing *Hannon v. Ehrlich*, 102 Ohio St. 176, syllabus ¶ 4 (1921)).

Hosts owe social guests a standard of care that falls between that owed to business invitees, on the one hand, and licensees on the other. Social guests are those on the premises "presumably giving the possessor some personal benefit," such as social interaction. *Ard v. Fawley*, 135 Ohio App.3d 566, 571 (1999); *Howze v. Carter*, 9th Dist. Summit No. 24688, 2009-Ohio-5463 at *4 (citing *Scheibel, supra*, 156 Ohio St. at 329 & *White v. Brinegar,* 9th Dist. No. 16429, 1994 WL 232692, at *2 (1994)). Hosts, in turn, are the landowners or occupiers who invite guests, either impliedly or expressly, onto the land. *Ard, supra,* 135 Ohio App.3d at 571; *Williams v. Cook*, 132 Ohio App.3d 444, 449 (1999) (citing *Starost v. Bradley*, Montgomery App. No. 17319, 1999 WL 41897).

The parties do not dispute that plaintiff was a "social guest" at the party; rather, they disagree on whether defendant was a "host" or a "licensor." Defendant claims that Vantilburg, not he, was the host of the party. He argues Vantilburg was in charge of the party, selected which guests to invite, sent out invitations, procured the guns and explosives, and was the one to benefit from the diapers that guests brought.

Based on Vantilburg's actions, he may very well qualify as a "host." But it does not follow that Vantilburg's status as a host somehow precludes the defendant from also qualifying as a host.

Defendant helped Vantilburg extensively in preparing for the party and ensuring that guests were comfortable and entertained. Specifically, defendant: offered the use of his home

5

and property so that guests could gather; hauled the refrigerator onto his property, knowing that it was going to be detonated for the party; dragged an old box van into his backyard to serve as a shooting target; provided his own truck and trailer as a staging area for ammunitions; and set out tables for guests to use while shooting. At the party, defendant benefitted personally from socializing throughout the day with all the guests and his family members who were in attendance.

Defendant also created a welcoming atmosphere for plaintiff: he had family members directing her and the others who came to the diaper shootout where to park; greeted plaintiff and her son; told plaintiff where to put the food she brought; and took plaintiff and her son into the backyard so that her son could use his airsoft rifle. At no point did defendant indicate that plaintiff was unwelcome on the premises.

I find the facts create, at the very least, a genuine dispute as to whether defendant impliedly invited plaintiff onto his property for the party, and, therefore, was a host with the ensuing duty to exercise ordinary care.

### B. Defendant's Duty of Care

A host who invites a social guest onto his premises owes the guest two duties, namely, to: 1) exercise ordinary care not to cause injury to his guest, either by any act or activities he carries on while the guest is present, and 2) warn the guest of any condition of the premises of which he is aware and which a person of ordinary prudence and foresight in his position should reasonably consider dangerous, if the host has reason to believe that the guest does not know and will not discover such dangerous condition. *Scheibel, supra*, 156 Ohio St. at 329. Defendant argues he did not breach his duties to plaintiff under either standard.

### 1. Duty to Exercise Ordinary Care

6

Defendant claims he did not breach his duty to exercise ordinary care because he did not "carry on" the activity — blowing up the refrigerator — that injured the plaintiff. He attempts to minimize his role he and put all the blame onto Vantilburg.

Several facts, however, show defendant's involvement, including that he: hauled the refrigerator to his house; read the H2 safety instructions; supplied Vantilburg with the tools to repurpose the refrigerator; helped Vantilburg move the repurposed refrigerator from the barn into his backyard; and measured and set up tables fifty yards from Vantilburg's target. Defendant's conduct demonstrates that he, though to a lesser extent than Vantilburg, directly engaged in activities leading to and causing the explosion.

There is a genuine dispute of material fact, moreover, as to whether defendant exercised ordinary care *vis-a-vis* the danger from blowing up a sealed metal target containing three times the explosives Vantilburg had earlier used to blow up a small, vented target.[1] In detonating the refrigerator, defendant understood the dangerous nature of the explosives: he had read the H2 label warning of serious bodily injury and possible loss of life and limb. Defendant also understood, per the instructions on the one-pound H2 canister, that one pound of H2 required people to stand at least fifty yards away.

A rational jury could conclude that a host who allows people to come onto his property for a crowded party, attends and supervises the party, and participates to some extent in arranging for an enclosed metal object to blow up in its midst, has a duty to understand all the risks involved and take adequate precautions to avoid injuring his guests.

### C. Duty to Warn of Dangerous Conditions

---

[1] The parties disagree as to whether defendant knew that Vantilburg intended to place three pounds of the H2 into the refrigerator. Regardless, even assuming that defendant did not know the amount that Vantilburg intended to use, defendant still failed to identify just how much H2 was being used, and, in turn, the appropriate clearance distance.

7

Defendant claims he did not breach his duty to warn plaintiff of dangerous conditions on the premises because the term "conditions" is limited to defects in the real property or its fixtures, not movable objects like large, sealed metal containers enclosing H2 explosives. In support, he points to *Scheibel*, the Ohio Supreme Court's seminal case on defining the contours of duties owed social guests, which, in crafting the new standard, cites primarily to cases where the "condition" of the premises causing an injury was either part of the real property or a fixture. *Scheibel, supra*, 156 Ohio St. at 318-323 (citing *Long v. Joestlein*, 193 Md. 211, 66 A.2d 407, 409 (1949) (plaintiff fell down stairs); *Mitchell v. Legarsky*, 95 N.H. 214, 60 A.2d 136, 137 (1948) (plaintiff tripped on a torn piece of linoleum and fell down stairs); *Page v. Murphy*, 194 Minn. 607, 261 N.W. 443, 445 (1935) (plaintiff slipped on a wet tile and fell down stairs); *Morril v. Morril*, 140 N.J.L. 557, 142 A. 337, 340 (1928) (plaintiff struck by garage door); *Greenfield v. Miller*, 173 Wis. 184, 180 N.W. 834, 836 (1921) (plaintiff tripped over a rug).

However, nothing in the cited cases or in the holding in *Scheibel* limits the term "condition" to such a narrow interpretation. In fact, in *DiGildo v. Caponi*, 18 Ohio St.2d 125, 129 (1969), the Ohio Supreme Court found that a parked car on the host's inclined driveway could be "a dangerous condition[]giving rise to a duty to warn the plaintiff." Furthermore, in *Penix v. Boyles*, 2003-Ohio-2856, WL 21279428, *4 (Ohio App.), the court held that a bottle full of gasoline, thrown into a fire pit, was a "condition of the premises." In *Penix*, the court specifically stated that *Scheibel* did not limit "conditions of the premises" to real property or fixtures, and that it had found no other legal authority to support such a proposition. *Id*.

Defendant attempts to cabin *DiGildo* and *Penix* by arguing that the true conditions that caused the dangers in those cases — the car on the incline and the fire pit — were static. Defendant's interpretation goes against the plain reading of the cases. In both cases, the courts

8

focused on the movement of objects — the parked car and thrown bottle — as the dangerous conditions. While neither the incline nor fire pit was dangerous, inattention to the dangers that certain actions — parking and throwing the gas-filled bottle — made the conditions of the premises, under those circumstances, dangerous, and foreseeably so. Accordingly, like the objects in *DiGildo* and *Penix*, the explosive-filled refrigerator also qualifies as a "condition of the premises."

Here, a genuine dispute of material fact exists as to whether defendant had a duty to warn plaintiff of the dangerous nature of the refrigerator. Defendant knew the refrigerator contained explosives, had its door bolted shut, and that Vantilburg was going to blow it up. A rational jury could find that any reasonable person would consider that combination of circumstances to be dangerous. And, while the plaintiff may have known that something was about to happen — she was standing in the backyard filming the scene — the facts do not suggest she had actual knowledge, or that she would discover, the refrigerator was going to be blown up and send shrapnel flying at her.

I therefore deny defendant's motion for summary judgment.

## Conclusion

It is therefore

ORDERED THAT: defendant's motion for summary judgment (Doc. 143) be, and the same hereby is denied.

The Clerk shall forthwith set a status/scheduling conference.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge